953 So.2d 786 (2007)
STATE of Louisiana
v.
Keith WALKER.
No. 2006-KK-1045.
Supreme Court of Louisiana.
April 11, 2007.
*787 Charles C. Foti, Jr., Attorney General, Eddie J. Jordan, Jr., District Attorney, Matthew Brandon Derbes, Donna R. Andrieu, Assistant District Attorneys, for applicant.
Craig Evan Gibbs, New Orleans, for respondent.
CALOGERO, Chief Justice.
In a single bill of information, the defendant Keith Walker is charged with possession of heroin with intent to distribute, a violation of La.Rev.Stat. 40:966(A)(1), and possession of marijuana with intent to distribute, a violation of La.Rev.Stat. 40:966(A)(2). The defendant moved to suppress the evidence and, after conducting a hearing on August 26, 2005, the district court granted the motion. The state sought review in the court of appeal which found no error in the trial court's ruling. State v. Walker, 06-0411 (La.App. 4 Cir. 4/25/06). We granted the state's writ application to determine whether the conduct of the police leading to the seizure of the contraband, i.e., the officer's following the defendant into a third party's residence to effect an investigatory stop, did not require a warrant and was otherwise entirely reasonable. State v. Walker, 06-1045 (La.6/23/06), 930 So.2d 989. For the reasons set forth below, we vacate the district court's ruling granting the motion to suppress and remand the case to the district court for further proceedings.
DISCUSSION
The circumstances surrounding recovery of the evidence in the present case are straightforward. On the afternoon of March 9, 2005, three units of the New Orleans Police Department conducting a proactive "stacked patrol" of the Hollygrove area entered the 3400 block of General Ogden Street. From their vantage point in the lead vehicle, Officers Schnapp and O'Brien spotted the defendant and another man standing directly in front of the residence located at 3428 General Ogden. Officer Schnapp testified at the hearing on the motion to suppress that the defendant had his back to the street "and was displaying an object or objects to the second black male who was facing him, *788 that is his arms were bent at the elbow and his palms were facing up." When the two men observed the approaching police unit, they separated. As the other man walked away, the defendant tucked his opened hand into his pants pocket and entered the front yard of 3428 General Ogden through an open fence, heading for a center stairway which provided access to the porch of the residence.
The officers exited their patrol unit and asked the defendant to stop. The defendant instead walked up the stairs, pushed his way past an African-American woman standing at the doorway of the residence, and went inside. Officer Schnapp also walked past the woman in the doorway and into the residence. As he entered, the officer saw the defendant remove a yellow object from his pants pocket and walk through the front room of the residence into the kitchen, which also served as a laundry room containing a washer and dryer. The defendant discarded the object behind the dryer and then surrendered to the police. After handing defendant over to his partner, Officer Schnapp reached behind the dryer and retrieved a single plastic baggie containing eighteen foils of heroin and fifteen yellow bags of marijuana. The officer then spoke to the woman in the doorway who informed him that she knew the defendant "from the neighborhood but he was not allowed in her residence." The defendant made no statements to the officers on the scene but indicated at booking that he lived in the 3400 block of Hollygrove Street, an address around the corner from 3428 General Ogden.
Officer Schnapp testified at the suppression hearing that he decided to act based on his observation that the defendant held something in his hand as he stood outside the premises of 3428 General Ogden talking with the unidentified man and that "when he saw us[,] he began to move." Based on his seventeen years of experience in the field, Officer Schnapp concluded that he and his partner had interrupted a narcotics transaction. At the same time, the officer acknowledged that he did not hear what, if anything, the defendant may have said to the woman at 3428 General Ogden when he pushed past her through the front door. The officer further acknowledged that he said nothing to the woman before he followed the defendant into the home, that he did not know the residence belonged to someone else until after he retrieved the contraband discarded behind the clothes dryer and placed the defendant under arrest, and that he did not see what the defendant held in his hand until he followed his suspect across the threshold of the residence.
At the close of the suppression hearing, the district court agreed with the state that Officer Schnapp and his partner had formulated reasonable suspicion for an investigatory detention when they first directed the defendant to stop outside the residence at 3428 General Ogden.[1] However, *789 the district court ultimately found that, while Officer Schnapp had engaged in good police work, he lacked both probable cause to believe that the defendant had actual possession of any drugs before he entered the home and exigent circumstances for crossing the threshold of the premises without a warrant, i.e., that there was a reasonable probability that inside the residence the defendant would destroy any contraband. "I think what the officer did was reasonable," the district court observed, "but the question is, [wa]s it legal? . . . Can you run into somebody else's house after somebody and you don't know if he in fact does have drugs on him?"
Although the district court reached the wrong result under the particular facts of this case, it began with the correct legal premise. The Fourth Amendment applies "`to all invasions on the part of the government and its employ[e]es of the sanctity of a man's home and the privacies of life.'" Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980)(quoting Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886)). Because the "`physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,'" Payton, 445 U.S. at 585-86, 100 S.Ct. at 1379-80 (quoting United States v. United States Dist. Court (Plamondon), 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)), absent exigent circumstances or some other well-recognized exception such as consent, the police must obtain a warrant before they enter the home to conduct a search or to seize a person and thereby intrude on an individual's reasonable and legitimate expectation of privacy. Payton, 445 U.S. at 599-602, 100 S.Ct. at 1387-88; see also Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)(absent consent or exigent circumstances, a search warrant is required to enter the home of a third party to arrest an individual; thus, any evidence seized without a search warrant is inadmissible against the third party).
La. Const. art. 1, § 5 provides that any person adversely affected by a search or seizure in violation of the state constitution has standing to raise its illegality. Thus, the warrantless entrance and the seizure of an individual inside a third person's house may violate the third person's state constitutional guarantee against unreasonable searches and seizures. In order to provide innocent third persons in such situations with a more perfect safeguard than the Fourth Amendment to be secure in their houses, the state constitutional delegates specifically considered and adopted the provision giving standing to raise the illegality to "(a)ny person adversely affected." See Documents of the Louisiana Constitutional Convention of 1973 Relative to the Administration of Criminal Justice, pp. 905-906, 1145-1146; Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La. L.Rev. 1, 23 (1974); and Jenkins, The Declaration of Rights, 21 Loy.L.Rev. 9, 29 (1975). Still, a Louisiana court must view the actions of the officer under the particular circumstances and determine whether his presence inside the home violated the defendant's privacy. "It is defendant's right to privacy, not a specific place, which is protected by the Fourth Amendment." State v. Nine, 315 So.2d 667, 671 (La.1975), *790 citing Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
Nevertheless, even granting "the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic," Payton, 445 U.S. at 601, 100 S.Ct. at 1388 (footnote omitted), it has long been settled that a person may not frustrate an otherwise lawful arrest on probable cause which the police are entitled to make in a public place without a warrant, United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), simply by stepping across the threshold of his home. United States v. Santana, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976)("[A] suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under Watson, by the expedient of escaping to a private place.").
The question seemingly raised by the instant case is whether the Santana rationale with regard to an arrest based on probable cause also provides a rationale for pursuing an investigatory stop, based on reasonable suspicion, begun in a public place and continued across the threshold of a home without a warrant. Santana generally stands for the proposition that "`when a citizen has knowingly placed himself in a public place and valid police action is commenced in that public place, the citizen cannot thwart that police action by then fleeing into a private place.'" See 4 Warren R. LaFave, Search and Seizure, § 9.2(d), p. 316 (4th ed. 2004)(quoting Edwards v. United States, 364 A.2d 1209, 1214 (D.C.App.1976), aff'd on reh'g, 379 A.2d 976 (D.C.App.1977))(on original hearing, the court assumed there was no probable cause for an arrest, but still applied Santana to affirm the denial of the motion to suppress; on rehearing, the court revisited the question of probable cause and found there was such to effectuate an arrest, and again applied Santana to affirm the denial of the motion to suppress). In such circumstances, "the suspect has only himself to blame for the fact that the encounter has been moved from a public to a private area." LaFave, Search and Seizure, § 9.2(d) at 317. However, because an investigatory stop based on reasonable suspicion requires only "`some minimal level of objective justification,'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)(quoting Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), as opposed to probable cause required for an arrest or a search, courts have divided over the question of whether as a general matter the police may pursue a fleeing suspect across the threshold of a home to complete an investigatory detention. Compare United States v. Gori, 230 F.3d 44, 53 (2nd Cir. 2000) (holding that the Santana analysis, which supports the warrantless arrest of a suspect who has no legitimate expectation of privacy in the home, a fortiori allows the lesser intrusion of a brief investigatory detention); with State v. Maland, 140 Idaho 817, 103 P.3d 430, 435 (2004) (holding that police may not intrude into a residence to effectuate a stop pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
However, because of the particular facts of this case, we need not reach the question whether the police may pursue an investigatory stop begun in a public place across the threshold of a home without a warrant to find that Officer Schnapp's seizure of the contraband here was lawful. The defendant did not retreat into his own home but into the residence of a third person who, by her own account to the police, had previously informed him that he was not allowed in her home. Although *791 Officer Schnapp was not aware at the time he observed the defendant push his way into the residence that he had witnessed the defendant commit the felony offense of unauthorized entry of an inhabited dwelling, see La.Rev.Stat. 14:62.3, the defendant had no objectively reasonable and legitimate expectation of privacy when he fled into that home. See Terry v. Martin, 120 F.3d 661, 664 (7th Cir.1997)(temporary visitor with no connection to the premises other than criminal activity had no reasonable expectation of privacy and no standing to object to a search of the residence by police); State v. McKinney, 93-1425, p. 12 and n. 4 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, 1126 and n. 4 (suspect who did not have owner's permission to be in the house had no reasonable expectation of privacy therein, i.e., one that society would recognize)(citing United States v. Jacobsen, 466 U.S. 109, 122, n. 22, 104 S.Ct. 1652, 1661, n. 22, 80 L.Ed.2d 85 (1984)(burglar has no legitimate expectation of privacy in home that he is burglarizing)).
While La. Const. art. I, § 5 explicitly confers upon a Louisiana citizen broader standing than the federal Fourth Amendment to raise the violation of a third person's privacy rights, because it protects anyone "adversely affected" by the official action, State v. Owen, 453 So.2d 1202, 1205 (La.1984), Officer Schnapp's intrusion on the owner's privacy interests by entering her residence on the heels of an intruder and removing him without her express consent scarcely added to the initial disruption caused by the defendant's unauthorized entry into the home after he ignored the officers' attempt to stop him outside the premises. Under these circumstances, permitting the defendant to assert a third party's privacy interests he had violated by his own actions would serve no legitimate purpose. United States v. Leon, 468 U.S. 897, 907 and n. 6, 104 S.Ct. 3405, 3412 and n. 6, 82 L.Ed.2d 677 (1984) (exclusionary rule is designed to deter police misconduct and its application therefore "`must be carefully limited to the circumstances in which it will pay its way by deterring official [ ]lawlessness.'")(quoting Illinois v. Gates, 462 U.S. 213, 257-58, 103 S.Ct. 2317, 2342, 76 L.Ed.2d 527 (1983) (White, J., concurring in the judgment)); cf. State v. Barrett, 408 So.2d 903, 905 (La.1982)(defendant not "adversely affected" by illegal entry into third person's home by police executing an arrest warrant for defendant and seizing evidence used only against defendant and not against third person).
Because the officers did not need a warrant to enter the premises, "[t]he touchstone of [the] analysis under the Fourth Amendment is . . . `the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" Pennsylvania v. Mimms, 434 U.S. 106, 108-09, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977)(quoting Terry, 392 U.S. at 19, 88 S.Ct. at 1878-79). For purposes of the Fourth Amendment, the reasonableness of any intrusion on an individual's privacy interests "depends `on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" Mimms, 434 U.S. at 109, 98 S.Ct. at 332 (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975)).
In the present case, we have no dispute with the trial court's finding that the officers' conduct was otherwise reasonable for purposes of the Fourth Amendment. Officer Schnapp's observation of an apparent drug deal followed by the defendant's flight on approach of the "stacked patrol" gave the police the requisite reasonable suspicion, i.e., minimal level of objective justification, to pursue and detain *792 their suspect. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000)("Our cases have . . . recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.") (citations omitted). In fact, the seizure of the defendant did not occur until after he discarded the baggie filled with contraband behind the clothes dryer in the residence, whereupon he acquiesced to the official show of authority by surrendering to the officers. Cf. California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991)(recovery of property abandoned by a person before the police have seized him either by the application of physical force or by his submission to the assertion of official authority does not implicate the Fourth Amendment). The defendant, therefore, had no privacy interests in the items he discarded at the time the officers physically detained him and recovered the evidence. Accordingly, under the facts of this case, the seizure of the abandoned contraband from inside the residence and the subsequent arrest of the defendant were not in violation either of the defendant's right to privacy under the Louisiana Constitution or of his rights under the Fourth Amendment to the United States Constitution.

DECREE
For the reasons set forth above, the district court ruling granting the defendant's motion to suppress is vacated and the case is remanded to the district court for further proceedings.
DISTRICT COURT JUDGMENT VACATED; CASE REMANDED TO THE DISTRICT COURT
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., dissenting.
I respectfully dissent. In my opinion, the issue presented by this case is whether it was legal for the police officer to pursue the defendant into a private residence. This case presents a situation in which the police had grounds sufficient for a Terry stop[1], but they lacked probable cause to make an arrest. Therefore, the issue is whether a police officer may conduct a "hot pursuit", when a suspect has entered *793 a private home. Police officers can not actively create "street encounters" unless they have knowledge of suspicious facts and circumstances sufficient to allow them to infringe upon the suspect's right to be free from government interference. State v. Saia, 302 So.2d 869 (La.1974). These encounters must be carefully scrutinized to determine if there is in fact probable cause.
In the instant case, the State was unable to provide controlling jurisprudence in which flight alone is sufficient to elevate reasonable suspicion into probable cause to justify warrantless pursuit into a residence. The record reflects that the police officer observed the defendant standing on the sidewalk in front of 3428 General Ogden Street in New Orleans, Louisiana. The Defendant stood with his back to the street and was showing another unknown male something in his hand. When the men saw the police officers' vehicles, they separated. Defendant placed his hands in his pockets and walked into the front yard at 3428 General Ogden Street. Sergeant Jake Schnapp exited his vehicle and requested the defendant to stop. The defendant pushed an unknown female, who was standing in the doorway, and entered the residence.
This Court has not previously recognized an exception to the rule requiring probable cause and exigent circumstances for a police officer to lawfully pursue a suspect into a private residence.[2] Under present Louisiana law, because the officers in the present case had only a reasonable suspicion when they approached the defendant, they had no authority to pursue the defendant into the residence unless the defendant's flight gave rise to probable cause. An individual's startled look at approaching officers and retreat into a protected area does not, alone, give rise to probable cause for an arrest. State v. Ferrand, 664 So.2d 396 (La.1995); State v.Talbert, 449 So.2d 446, 448. Although flight alone, does not always indicate guilt, flight, combined with other information the officers may rely upon, may amount to probable cause to support an arrest. See State v. Hathaway, 411 So.2d 1074,1078-79(La.1982).
The Fourth Amendment prohibits police officers from making a warrantless entry into a person's home, unless the officers have probable cause, and are presented with exigent circumstances. Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); United States v. Prescott, 581 F.2d 1343, 1350 (9th Cir. 1978) ("[A]bsent exigent circumstances, police who have probable cause to arrest a felony suspect, must obtain a warrant before entering a dwelling to carry out the arrest."). "It is a `basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton, 445 U.S. at 586, 100 S.Ct. 1371, 63 L.Ed.2d 639.
The Fourth Amendment to the United States Constitution and Art. 1, § 5 of the Louisiana Constitution protect citizens against unreasonable searches and seizures. The purpose of the Fourth Amendment, however, is not to eliminate all contact between the police and the citizenry. Police officers do not need probable cause to arrest, or reasonable cause to detain each time they attempt to converse with or *794 approach a citizen. As long as the person remains free to disregard the encounter and walk away, there has been no intrusion upon that person's liberty or privacy which would require some particularized and objective justification under the Fourth Amendment. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Williams, supra; State v. Lanter, 391 So.2d 1152 (La.1980).
When police officers make an investigatory stop without the legal right to do so, property abandoned or otherwise disposed of as a result thereof, cannot be legally seized. With regard to abandoned contraband, if property is abandoned without any prior unlawful intrusion into a citizen's right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights. It is only when the citizen is actually stopped without reasonable cause, or when a stop without reasonable cause is imminent, that the "right to be left alone" is violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Andrishok, supra; State v. Chopin, supra; State v. Ryan, 358 So.2d 1274 (La.1978).
An arrest by a police officer can be made without a warrant only if he has reasonable cause to believe that the person to be arrested has committed an offense. LSA-C.Cr.P. art. 213. Reasonable cause for an arrest exists when facts and circumstances known to the arresting officer, and of which he has reasonable trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Edwards, 375 So.2d 1365 (La.1979). Under the facts of this case, I would affirm the decision of the lower courts, in granting the motion to suppress the evidence.
NOTES
[1] In brief, as he did at the hearing, the defendant asserts there was an insufficient basis for a reasonable belief under La.Code Crim. Proc. art. 215.1 that the defendant had been involved in criminal activity. Essentially questioning the officer's credibility, the defendant contends the officer told differing stories with regard to the drug transaction: one that involved a perceived transaction with a black man and another that involved a perceived transaction with two white men in a black pick-up truck. Officer Schnapp explained at the hearing that the black truck was stopped by other officers and that, though he had included that detail in the gist of his police report, he had neglected to include it in the narrative portion. He explained that all four persons were at the scene and that the defendant and the black man may have been intending to "service" the potential buyers in the black truck. Before concluding there was a reasonable basis for stopping the defendant, the district court specifically found the officer's testimony to be credible, noting that the officer could have simply lied rather than say he had seen no actual contraband during the transaction, and dismissed the omission in the report as simply a mistake. We find no abuse of discretion in that determination.
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1, as well as by both state and federal jurisprudence. State v. Hayden, 98-2768 (La.App.4Cir.5/17/00) 767 So.2d 732; State v. Belton, 441 So.2d 1195 (La.1983); State v. Andrishok, 434 So.2d 389 (La.1983); State v. Chopin, 372 So.2d 1222 (La.1979). We have held that reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Andrishok, supra; State v. Chopin, supra.
The totality of the circumstances, "the whole picture," must be considered in determining whether reasonable cause exists. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Although flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, State v. Chopin, supra; State v. Truss, 317 So.2d 177 (La.1975), this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause, State v. Williams, 421 So.2d 874 (La.1982); State v. Wade, 390 So.2d 1309 (La.1980).
[2] However, other courts have ruled that reasonable suspicion(rather than probable cause) with a "hot pursuit" may justify a warrantless entry into a suspect's home. United States v. Gomez, 633 F.2d 999(2nd Cir.1980). The person stopped retreated into a nearby apartment. The court ruled that force can be used when an individual will not stop, but asserted that the "agents" initial kicking and banging on the door, gave them considerable pause.