PAUL A. BONIN, Judge.
 

 |, Richard Bell moved to suppress from evidence at his trial a .357 Magnum and a marijuana “cigar” seized from his bedroom by a police officer who had entered his apartment without a warrant. La. C. Cr. P. art. 703 A. The district court denied the motion to suppress and Mr. Bell applied for supervisory writs in this court.
 
 See
 
 La. Const. Art. V, § 10(A) and La. C. Cr. P. art. 912.1 C(1). We ordered additional briefing as well as oral argument in order to more closely examine Mr. Bell’s contention that the prosecution had not established one of the limited and well-recognized exceptions for entry into his home without a warrant and for conducting a “protective sweep” of his bedroom once inside the home. We conclude that an exception to the search warrant requirement justified the warrantless entry, but that the police, having accomplished the purpose for their entry, were nevertheless unreasonable in later entering into Mr. Bell’s bedroom. For the reasons which follow, we grant the writ and reverse the trial court’s ruling.
 

 I
 

 Richard Bell was in the bedroom of his apartment on the evening of August 19, 2008. At approximately 10:50 p.m., Mr. Bell and his girlfriend, Unique Tolliver, were roused. Six police officers had entered the apartment and announced their presence. Ms. Tolliver left their bedroom to speak with the police and closed the door behind her. Along with their two minor children, Mr. Bell remained in the bedroom.
 

 Six police officers had been on patrol in the apartment complex when they observed a man, one Cameron Mack, smoking a marijuana joint in the hallway. When Mr. Mack noticed the officers observing him, he discarded the joint and dashed into Mr. Bell’s apartment. The officers pursued him into the apartment through the unlocked front door. Mr. Mack was seized inside and immediately brought outside the apartment by some of the officers. It was at this point that Ms. Tolliver left her bedroom and shut the door behind her. Ms. Tolliver told the officers that she knew Mr. Mack, but that he was not a resident of her apartment. Officers were in the midst of interviewing Ms. Tolliver when they heard a noise coming from the back area of the apartment, prompting them to enter the bedroom where they found Mr. Bell with the contraband. Once the officers learned that Mr. Bell previously had been convicted of a felony, he was arrested for violating La. R.S. 14:95.1 and for simple possession of marijuana, a violation of La. R.S. 40:966 D(l).
 
 [1]
 
 This prosecution ensued.
 

 
 *506
 
 |sMr. Bell argues that the trial court erred in denying his motion to suppress on two grounds: (1) that the Fourth Amendment does not allow for a warrantless entry into a home when the police, even with probable cause, are in “hot pursuit” of a wanted person whose offense is a misdemeanor, and (2) that the Fourth Amendment does not extend to the full “sweep” of his apartment, and especially his bedroom, which the officers conducted under the particular circumstances of this case. The prosecution argues that there is no constitutional distinction between a felony and a misdemeanor when officers are in “hot pursuit” of a person whom the police have probable cause to believe committed a crime. The prosecution also argues that the officers, once lawfully inside the apartment, were authorized to conduct a “protective sweep” of the entire apartment to ensure their personal safety during the investigation.
 

 At the outset of the discussion, we emphasize that there is no dispute that the police officers had probable cause to believe that Mr. Mack had committed a misdemeanor.
 
 [2]
 
 There is also no dispute that the officers had removed Mr. Mack from the apartment at least some short while before other officers approached Mr. Bell’s bedroom. Finally, there is no suggestion that Ms. Tolliver was viewed by any of the officers as a confederate of Mr. Mack or as a threat to the officers’ safety.
 

 II
 

 The Fourth Amendment protects “the right of the people to be secure in their ... houses ... against unreasonable searches and seizures.” U.S. Const. amend. IV. “At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from
 
 unreasonable
 
 governmental intrusion.”
 
 Silverman v. United States,
 
 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) (emphasis added). The Louisiana Constitution similarly protects the right of each person to keep his home free of unreasonable searches or seizures. La. Const. Art. I § 5. Warrantless searches are per
 
 se
 
 unreasonable under the Fourth Amendment, “subject only to a few specifically established and well-delineated exceptions.”
 
 Katz v. United States,
 
 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Because the evidence sought to be suppressed in this case was seized from within Mr. Bell’s home without a warrant as ordinarily required by the federal and Louisiana constitutions, the prosecution bears the burden of establishing that the evidence was seized pursuant to one of the limited exceptions to the warrant requirement.
 
 Vale v. Louisiana,
 
 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970);
 
 State v. Tatum,
 
 466 So.2d 29, 31 (La.1985);
 
 State v. Kelly,
 
 06-0475, pp. 1-2 (La.App. 4 Cir. 11/21/06), 946 So.2d 222, 223; La. C. Cr. P. art. 703 D.
 

 To penetrate the broad protections afforded the home, the police must show probable cause and exigent circumstances to justify warrantless entry into the premises.
 
 Payton v. New York,
 
 445 U.S. 573, 589-90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In
 
 Payton,
 
 the United States Supreme Court expressed this principle:
 

 In terms that apply equally to seizures of property and to seizures of persons,
 
 *507
 
 the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.
 

 Id.
 
 Of course, “the Fourth Amendment protects people, not places.”
 
 Katz v. United States,
 
 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Although the actions of Mr. Mack must be considered, our discussion is limited to Mr. Bell, the householder, and emphasize that it is
 
 his
 
 home which the police entered. The Fourth Amendment only protects persons against
 
 unreasonable
 
 searches and seizures.
 
 See Vernonia School Dist. 47J v. Acton,
 
 515 U.S. 646, 652, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (“As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is reasonableness.”). For the police to violate a defendant’s Fourth Amendment protection, the defendant
 

 must have had a “reasonable expectation of privacy” which involves both a person’s subjective expectation of privacy and an expectation that society is prepared to recognize as “reasonable.”
 
 See Katz,
 
 at 361, 88 S.Ct. 507 (Harlan, J., concurring). The determination of a motion to suppress involves “the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge.”
 
 Rakas v. Illinois,
 
 439 U.S. 128, 133, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In order to obtain the remedial benefits of a Fourth Amendment violation through the suppression or exclusion of evidence, it is necessary to establish not only that the search was illegal, but “also that [the defendant] had a legitimate expectation of privacy” in the premises searched.
 
 See Rawlings v. Kentucky,
 
 448 U.S. 98, 104-105, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (citing
 
 Rakas,
 
 at 131, n. 1, 99 S.Ct. 421). Mr. Bell’s expectation of privacy is at its height in his own home, for it is the “physical entry of the home that is the chief evil against which the wording of the Fourth Amendment is directed.”
 
 United States v. United States District Court,
 
 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Having determined that Mr. Bell had a legitimate expectation of privacy in the premises searched, we now turn to the question of whether the police Improperly entered Mr. Bell’s home in pursuit of Mr. Mack after observing Mr. Mack commit a crime.
 

 Ill
 

 Mr. Bell first argues that the Fourth Amendment does not allow for a warrantless entry into a home when the police are in “hot pursuit” of a wanted person whose offense is a misdemeanor. We find it helpful in our resolution of this controversy to distinguish between the attributes of offenses classified as misdemeanors and as felonies. Possession of marijuana, by way of illustration, is a misdemeanor offense for first-time offenders — a relatively minor offense punishable by a fine of not more than five hundred dollars, a prison sentence of not more than six months, or both. Because a person convicted on that charge is not subject to punishment at hard labor, a person charged with possession of marijuana is not entitled to a jury trial. La. R.S. 14:2 A(6) and La. R.S. 40:966 E. Further, a person convicted of a first-time marijuana charge will not be entitled to an appeal, because appellate jurisdiction extends only to those cases that are triable by jury. La. Const. art. 5 § 10; La. C. Cr. P. art. 912.1. Cases for ordinary street crimes like possession of marijuana must be processed and brought to trial quickly, as the constitution tolerates relatively brief delays for simple misdemeanor offenses.
 
 *508
 

 State v. Reaves,
 
 376 So.2d 136, 138 (La.1979)
 
 (citing Barker v. Wingo,
 
 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)) (“[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.”).
 

 Felony offenses, on the other hand, require considerably more process, as felony offenders may be punished by death or imprisonment at hard labor. La. R.S. 14:2 A(4). A person charged with a felony must be present at all critical stages of the prosecution. La. C. Cr. P. art. 831. He has a right to an adversarial preliminary ^hearing and a trial by jury of at least six jurors.
 
 See
 
 La. Const. art. I, §§ 14, 17; La. C. Cr. P. arts. 291, 782. Along with possible punishment at hard labor, felony convictions carry collateral political and civil ramifications: limiting the right to vote while incarcerated and precluding felons from qualifying for elective public office. La. Const. art. I § 10. There are, then, clear differences in procedural, substantive, and collateral consequences depending upon whether the offense is classified as a misdemeanor or felony.
 

 We now turn to the effect of the nature of the underlying offense on a police officer’s ability to immediately pursue an offender from a public place into a private place when the offense was committed in the officer’s presence.
 

 Relying on language in
 
 Welsh v. Wisconsin,
 
 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), Mr. Bell argues that the “hot pursuit” exception to the warrant requirement is confined to circumstances in which the underlying offense is a felony. The United States Supreme Court noted that “it is difficult to conceive of a warrant-less home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.”
 
 Welsh v. Wisconsin,
 
 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). The holding in
 
 Welsh,
 
 however, did not exclude misdemeanor offenses entirely. Instead, the Court only held that “an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made.”
 
 Id.
 
 No bright line was drawn distinguishing an exigency based upon a misdemeanor rather than a felony. The police officers may have had reasonable suspicion that Mr. Mack was committing a felony, but they only had probable cause that he had committed a misdemeanor. In Louisiana, a first offense possession of marijuana charge is, as we have noted, a relatively laminor offense, but it is punishable with incarceration. It is, therefore, more serious than the offense in
 
 Welsh,
 
 which involved a non-jailable traffic offense.
 

 In
 
 United States v. Santana,
 
 the United Stated Supreme Court recognized the exigent circumstances inherent in a true hot pursuit situation, holding that by escaping to a private place, “a suspect may not defeat an arrest which has been set in motion in a public place.”
 
 United States v. Santana,
 
 427 U.S. 38, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). We have defined exigent circumstances as those “exceptional circumstances which, when coupled with probable cause, justify an entry into a ‘protected’ area that, without those exceptional circumstances, would be unlawful.”
 
 State v. Fournette,
 
 08-0254, p. 19 (La.App. 4 Cir. 7/2/08), 989 So.2d 199, 211,
 
 writs denied,
 
 08-1815, 08-1824 (La.4/17/09), 6 So.3d 789.
 
 Santana, Payton,
 
 and
 
 Four-nette,
 
 however, only applied the hot pursuit exigency to an arrest for a felony.
 
 Santana,
 
 427 U.S. at 41, 96 S.Ct. 2406;
 
 Payton,
 
 445 U.S. at 574, 100 S.Ct. 1371, and
 
 Fournette,
 
 08-0254 p. 1, 989 So.2d at 200.
 
 Payton
 
 left to the lower courts the application of the exigent circumstances
 

 
 *509
 
 exception, by expressly declining to consider the scope of the exigent circumstances exception that may justify a warrantless home arrest.
 
 Payton,
 
 445 U.S. at 583, 100 S.Ct. 1371. Accordingly, our jurisprudence does not preclude a finding of exigency under the circumstances of the case at bar.
 
 See, e.g., State v. Robinson,
 
 08-0652, p. 21 (La.App. 4 Cir. 5/13/09), 11 So.3d 613, 625 (finding the totality of the circumstances and the inherent necessities of the situation objectively established exigent circumstances in an in-home arrest for marijuana possession where it was unknown whether other narcotics were on the premises that might be destroyed);
 
 State v. Brown,
 
 99-0640, p. 10 (La.App. 4 Cir. 5/26/99), 733 So.2d 1282, 1288 (finding exigent circumstances when police pursued a defendant to arrest him for driving without a license);
 
 State v. Ennis,
 
 96-0811 (La.App. 4 Cir. 6/12/96), 676 So.2d 196, 199 (“Exigent circumstances arose when the officers observed [the defendant] take a small plastic bag from his mouth and place it in his hand and flee into the residence”);
 
 State v. Byas,
 
 94-1999 (La.App. 4 Cir. 12/15/94) 648 So.2d 37, 39 (finding exigent circumstances where the subject of the pursuit “could have escaped or destroyed contraband if the officers did not follow him into the house”).
 

 The United States Supreme Court has addressed the difference between a felony and a misdemeanor offense as it informs police authority to undertake a custodial arrest in
 
 Atwater v. City of Lago Vista,
 
 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). The police officer in
 
 Atwater
 
 performed a full custodial arrest on Mrs. Atwater after observing her driving a vehicle with her children while none of them were wearing seatbelts. The Supreme Court rejected Mrs. Atwater’s contention that the Court should forbid custodial arrest in the case of offenses that do not authorize jail time as punishment. Atwa-ter pointed to common law and founding-era principles that officers had no authority to conduct a warrantless arrest for a misdemeanor offense that did not qualify as a “breach of the peace.”
 
 Id.
 
 at 328, 121 S.Ct. 1536, citing
 
 Carroll v. United States,
 
 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Court in
 
 Atwater
 
 disagreed with that position, noting that this common-law rule was only “sometimes expressed” that way.
 
 Id.
 
 Indeed, the Court explained that the
 
 Carroll
 
 decision “conspicuously omitted any reference to a breach-of-the-peace limitation in stating that the ‘usual rule’ at common law was that ‘a police officer [could] arrest without warrant ... one guilty of a misdemeanor if committed in his presence.’”
 
 Id., citing Carroll
 
 at 156-157, 45 S.Ct. 280. Thus, the Court in
 
 Atwater
 
 concluded, “what
 
 Carroll
 
 illustrates, and what others have recognized, is that statements about the common law of warrantless misdemeanor arrest simply are not uniform.”
 
 Id.
 
 at 329, 121 S.Ct. 1536. The
 
 Atwater
 
 Court, after a linthorough discussion of founding-era principles leading to the drafting and ratification of the Fourth Amendment, further stated: “[w]e simply cannot conclude that the Fourth Amendment, as originally understood, forbade peace officers to arrest without a warrant for misdemeanors not amounting to or involving breach of the peace.”
 
 Id.
 
 at 340, 121 S.Ct. 1536 (discussion of original intent at 336-340). Accordingly, we cannot agree with Mr. Bell’s contention that a bright-line rule exists that precludes officers from pursuing an offender into a home for a crime committed in their presence simply because the underlying offense is not a felony.
 

 Mr. Bell also argues that
 
 State v. Lala,
 
 08-0484, (La.App. 4 Cir. 12/3/08), 1 So.3d 606, further supports his argument that a distinction between a felony and a misdemeanor if not made ought to be made. In
 
 *510
 

 Lala,
 
 police pursued a woman into her home after observing her yelling in the street and attempting to get the attention of passing drivers. Assuming that Ms. Lala was publicly intoxicated — a violation of Section 54-405 of the New Orleans Municipal Code — the police followed her into her home and recovered cocaine therein. This court found that the police’s pursuit of Ms. Lala into her home was unreasonable not simply because public intoxication is a minor offense but because police failed to demonstrate a sufficient State interest to overcome the unreasonableness of a warrantless home entry.
 
 Lala,
 
 supra at 615. The most important and dispositive factor, however, in
 
 Lala
 
 is that Ms. Lala’s behavior, strange as it was, only gave rise to reasonable suspicion warranting further police investigation; the police lacked the probable cause essential to arrest her on that charge, and once she “retreated into the home, any concern for public safety was alleviated.”
 
 Id.
 
 It is a crucial distinction in our case that the police had probable cause to arrest Mr. Mack [ nwhen they immediately pursued him into Mr. Bell’s home to complete an arrest for a crime committed in their presence.
 

 Moreover, in a case with facts more akin to ours, the Louisiana Supreme Court approvingly noted police authority to pursue a fleeing criminal from a public place into a private place when there is probable cause to arrest him.
 
 State v. Walker,
 
 06-1045, p. 5-6 (La.4/11/07), 953 So.2d 786, 790. In
 
 Walker
 
 (which upheld evidence seized pursuant to the arrest of a man suspected of taking part in a drug transaction who fled into a third person’s home when the police approached him), the court explained:
 

 [E]ven granting “the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic,”
 
 Payton,
 
 445 U.S. at 601, 100 S.Ct. 1371 (footnote omitted), it has long been settled that a person may not frustrate an otherwise lawful arrest on probable cause which the police are entitled to make in a public place without a warrant,
 
 United States v. Watson,
 
 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), simply by stepping across the threshold of his home.
 
 United States v. Santana,
 
 427 U.S. 38, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (“ [A] suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under
 
 Watson,
 
 by the expedient of escaping to a private place.”).
 

 Id.
 

 [3]
 

 Here, officers observed Mr. Mack smoke and discard a marijuana joint in a public place, giving rise to probable cause for his arrest. Mr. Mack may not, under
 
 Santana,
 
 elude capture for a valid arrest that was set in motion in a public place by escaping to a private place. Mr. Bell’s privacy was infringed upon first by Mr. Mack, and then by the police. The Louisiana Supreme Court in
 
 Walker
 
 acknowledged that the officer’s “intrusion on the owner’s privacy interests by entering her residence on the heels of an intruder and removing him without her express consent scarcely added to the initial disruption caused by the defendant’s | ^unauthorized entry into the home after he ignored the officer’s attempt to stop him outside the premises.”
 
 Id.
 
 at 791. Under similar circumstances here, the police were justified in pursuing Mr. Mack into Mr. Bell’s apartment for the limited purpose of ef
 
 *511
 
 fecting his arrest for a crime he committed in their presence in a public place.
 

 IV
 

 The second issue in this case is whether officers conducted a valid “protective sweep” of Mr. Bell’s apartment after gaining entry in pursuit of Mack — and after Mack had been apprehended and taken outside of the apartment. Police may conduct a protective sweep of the premises as part of permissible “reasonable steps to ensure their safety after, and while making, the arrest.”
 
 Maryland v. Buie,
 
 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). The Supreme Court in
 
 Buie
 
 confected a two-tiered system of justification for such sweeps, analogizing them to searches incident to arrest and to stops and frisks, holding that:
 

 [A]s an incident to arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.
 

 Id.
 
 at 334, 110 S.Ct. 1093. From the two tiers described above, this case presents an issue regarding the second tier, in which the area searched expands beyond the area immediately adjoining the place of arrest, and for which an officer must offer articulable suspicion in justification. In this case, police entered the premises in pursuit of only one offender, Mr. Mack, for the limited purpose of apprehending him for a relatively minor, nonviolent offense. Once Mr. Mack was secured and |istaken from the residence, officers collected a plastic bag of marijuana on the kitchen table, which Mr. Mack confessed belonged to him. Other officers remained inside to interview Ms. Tolliver, who was the only other person that officers encountered upon pursuing Mr. Mack into his intended refuge. Mr. Mack had been arrested and removed from the residence when other officers interviewed Ms. Tolliver, who was not suspected of any crime. Some time later, police heard a “noise,” prompting a sweep of the back bedroom of the residence. In this sweep, officers discovered Mr. Bell in a back bedroom, where next to him — in plain view- — were both a firearm and a cigar containing marijuana.
 

 The protective sweep doctrine allows officers to protect themselves in arrest situations that implicate danger. The second tier of
 
 Buie
 
 permits an extended sweep of the premises when officers demonstrate articulable facts giving rise to a reasonable belief that the premises harbor an individual posing a danger to those on the scene.
 
 Buie,
 
 supra at 334, 110 S.Ct. 1093. Requiring this from officers ensures that the scope of such a sweep remains closely tied to its protective purposes.
 
 See Buie,
 
 supra at 336, n. 3, 110 S.Ct. 1093 (comparing a protective sweep to a
 
 Terry
 
 pat-down, noting that, while both constitute “searches” under the Fourth Amendment, they are permitted on less than probable cause because of their limited scope for officer safety). Here, six police officers pursued Mack into a private residence for the narrow purpose of arresting him for a minor criminal offense committed in their presence. Officers did not conduct the protective sweep until after they had accomplished this objective and Mack had been taken from the residence. Officers conducted the sweep in the midst of interviewing Ms. Tolliver, a witness, at her kitchen table. The officers
 
 *512
 
 only asserted that an unelaborated “noise” gave rise to their sweep of Mr. Bell’s apartment. Officers had gained warrant-less entry to Mr. Bell’s residence |14for a limited purpose: to arrest Mr. Mack on probable cause for being in possession of marijuana. Officers had probable cause to arrest only Mr. Mack; they did not suspect Ms. Tolliver of any crime and had no reason to believe that Mr. Mack was accompanied by hidden confederates. Mr. Mack was arrested for only this offense, and to be reasonable, a full-blown protective sweep of Mr. Bell’s entire home must be supported by articulable facts indicating that the area to be swept harbors an individual posing a danger to those on the arrest scene. In the absence of facts implicating such a danger, the officers have neither articulated nor demonstrated that, once Mack was apprehended and secured outside the apartment, a protective sweep was still necessary for their safety. The officers must articulate their sense of danger and not a sense of mere curiosity. Under the circumstances here, the officers’ protective sweep of Mr. Bell’s bedroom was unreasonable. Reasonableness is always the touchstone in striking the balance between legitimate law enforcement concerns, such as officer safety, and protected individual privacy interests.
 
 See Maryland v. Buie, supra
 
 at 337, 110 S.Ct. 1093;
 
 Terry v. Ohio,
 
 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889;
 
 Richards v. Wisconsin,
 
 520 U.S. 385, 395-396, 117 S.Ct. 1416, 137 L.Ed.2d 615, and
 
 see generally Atwater v. City of Lago Vista,
 
 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549.
 

 V
 

 The prosecution asserts that the officers were authorized to seize the evidence found in Mr. Bell’s bedroom because it was in “plain view.” It is established that there are certain circumstances under which the police may seize evidence in plain view without a warrant.
 
 Coolidge v. New Hampshire,
 
 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). To determine whether these circumstances exist, there is a two-fold inquiry: first, whether there was a valid prior intrusion, and second, whether the | ^observation was made within the permitted scope of the intrusion.
 
 See, e.g., Minnesota v. Dickerson,
 
 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).
 

 An essential predicate to a valid warrantless seizure of incriminating evidence is “that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed.”
 
 Horton v. California,
 
 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). In this case, there are two intrusions by the police into Mr. Bell’s home: the initial entry through the front door in pursuit of Mr. Mack and the subsequent entry into Mr. Bell’s bedroom. The “prior intrusion” at issue here is the officers’ entrance not into his apartment but into Mr. Bell’s bedroom. The officers were not in a position to observe Mr. Bell or the evidence until they opened his bedroom door. Since we find this intrusion unreasonable, the evidence will be suppressed because the police were not validly in a position to make the observation to begin with.
 

 While we find that officers were reasonable in apprehending Mr. Mack pursuant to a chase in hot pursuit, the officers were not justified in lingering in the residence once they had accomplished their purpose. Under these circumstances, the police have not articulated a reasonable suspicion of danger. It is unreasonable to extend to the police the authority to conduct a protective sweep when officers are unable to demonstrate a basis for the belief that their safety might be in jeopardy.
 
 *513
 
 While the officers were narrowly authorized to intrude into Mr. Bell’s home (and privacy) in pursuit of Mr. Mack, subsequent entry into Mr. Bell’s bedroom was not within the scope of that limited intrusion. Furthermore, there was not a valid prior intrusion into the back bedroom because the officers failed to articulate facts that would necessitate a protective sweep under
 
 Buie.
 
 It was pursuant to this unreasonable intrusion into Mr. Bell’s bedroom that the officers |16seized evidence in plain view. Because the intrusion into Mr. Bell’s bedroom was not within the scope of the officers’ initial limited intrusion into his home, and because the officers did not independently offer a reasonable basis for intrusion into the bedroom, the officers were never validly in a position to observe the evidence in plain view. Therefore, the plain view “exception” is unavailing under these facts.
 

 VI
 

 Having captured their suspect and removed the intruder from Mr. Bell’s home, the police were unreasonable under these circumstances in advancing deeper into the recesses of his home. Accordingly, we reverse the trial court’s ruling. The evidence seized from the bedroom of Mr. Bell’s residence is suppressed. The matter is remanded to the trial court for further proceedings consistent with our decision.
 

 WRIT GRANTED; REVERSED AND REMANDED.
 

 [1]
 

 . Mr. Mack was also arrested for simple possession of marijuana. There is nothing in the record about the disposition of the marijuana in the plastic bag, which was found on the
 
 *506
 
 kitchen table of the apartment and of which Mr. Mack confessed ownership.
 

 [2]
 

 . The trial court emphasized that the apartment complex was in a high crime area. The officers may have had reasonable suspicion to believe that Mr. Mack was committing or had committed a felony, such as possession with intent to distribute marijuana.
 

 [3]
 

 . Although the court's holding in Walker was based on the fact that the defendant did not have a reasonable expectation of privacy when he fled into a third person's home, we find helpful guidance in the factual similarities and the court’s discussion of hot pursuit.