917 So.2d 667 (2005)
STATE of Louisiana, Appellee
v.
Greg P. STEPHENS, Appellant.
No. 40,343-KA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 2005.
Rehearing Denied January 19, 2006.
*670 Davenport, Files & Kelly, L.L.P. by Carey B. Underwood, Davenport, for Appellant.
William Robert Coenen, Jr., District Attorney, Johnny R. Boothe, Penny Wise Douciere, Assistant District Attorneys, for Appellee.
Before BROWN, C.J., and CARAWAY and LOLLEY, JJ.
CARAWAY, J.
With the state's agreement to dismiss charges of possession of marijuana and bail jumping, Greg Stephens entered a Crosby plea[1] to the crime of possession of methamphetamine with intent to distribute (La. R.S. 40:967) and received an agreed-upon sentence of ten years at hard labor. This appeal contests the trial court's ruling against the defendant on his motion to suppress. For the following reasons, we affirm.

Facts
The motion to suppress was tried without the presentation of testimony by either side. The following facts were submitted to the trial court at the hearing from the Affidavit of Probable Cause for Arrest:
On 3-9-03 at approximately 11:30 A.M. [t]his officer received information that Gregory Stephens was at the residence of Deshay Roberts located at 8353 Hwy 562. The caller advised that Stephens was at the residence under the carport working on a motorcycle. The caller further stated that Stephens had Methamphetamine in his possession. It *671 was known that there were outstanding warrants for Stephens for Probation Violations. Myself, along with Deputy Kenneth Alexander, Deputy Mark Jones and Deputy Tony Roberts went to the residence to attempt to arrest the subject. Upon our arrival, Stephens was found under the carport hiding behind a garbage dumpster. Stephens was placed under arrest and during a search of his person, a small plastic bag of suspected Marijuana was found when it fell out his pants. A black and orange backpack was found on the porch near Stephens. Stephens stated that the bag did not belong to him until it was opened and papers inside the bag had his name on them. He then changed his story and admitted that it was his. In this same backpack, approximately 24 grams of suspected Methamphetamine was discovered along [with] drug paraphernalia. There was also a Taurus 38 special nickel plated revolver in the backpack.
Additionally, the parties agreed to the submission of photographs of the arrest location into evidence. The photos depict an open garage adjacent to the front porch of the house. One entrance to the porch was directly accessible from the garage by climbing four wooden stairs. The porch is screened, and the opening of a screen door was required to gain access from the garage where Stephens was arrested to the porch. The photos showed a chair immediately beyond the screen door and the backpack located in the chair can clearly be seen through the screen door from the garage.
The trial court denied the motion to suppress, finding that Stephens had no constitutionally recognized reasonable expectation of privacy in the backpack he left on the porch. On February 15, 2005, Stephens entered a guilty plea to the crime of possession of methamphetamine with intent to distribute with an agreed sentence of ten years at hard labor in exchange for dismissal of other pending charges. Stephens reserved his right to appeal the denial of the motion to suppress and this appeal ensued.
On appeal, Stephens urges that the trial court erred in failing to consider that Louisiana law allows him to raise the privacy violation of the owner of the residence, and also in concluding that Stephens consented to a search of the backpack by not objecting to the deputy's request. The state contends that no reasonable expectation of individual privacy exists within the front porch of another's dwelling, that the backpack was abandoned and that the search of the backpack was a proper search incident to arrest.

Discussion
The Fourth Amendment to the United States Constitution protects "[the] right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, the provisions of the Louisiana Constitution Article 1, § 5 provide as follows:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
Both the United States and Louisiana constitutions prohibit unreasonable searches and seizures of constitutionally-protected locations and a warrant based *672 upon probable cause is normally required for such a search to be conducted. The capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection has a legitimate expectation of privacy in the invaded place. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Edwards, 00-1246 (La.6/1/01), 787 So.2d 981.
It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Tatum, 466 So.2d 29 (La.1985). When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving the admissibility of any evidence seized without a warrant. La. C.Cr.P. art. 703(D). Such exceptions to the warrant requirement include the plain view doctrine, search incident to a lawful arrest and abandonment.
A warrantless seizure of an item that comes within plain view of an officer in a legitimate position to view the item may also be reasonable under the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Guiden, 399 So.2d 194 (La.1981), cert. denied, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object's incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Guiden, supra; State v. Willis, 36,759 (La. App.2d Cir.4/9/03), 843 So.2d 592, writ denied, 04-1219 (La.4/1/05), 897 So.2d 593.
After making an arrest, an officer has the right to much more thoroughly search a defendant and his wing span, or lunge space, for weapons or evidence incident to a valid arrest. State v. Sanders, 36,941 (La.App.2d Cir.4/11/03), 842 So.2d 1260, writ denied, 03-1695 (La.5/14/04), 872 So.2d 516. This rule is justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence. Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
It is also well established that the warrantless search of abandoned property does not constitute an unreasonable search and does not violate the Fourth Amendment, because when individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); State v. Dobard, 01-2629 (La.6/21/02), 824 So.2d 1127. Generally, an individual enjoys a reasonable expectation of privacy in personal luggage that is protected by the Fourth Amendment. United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). However, an individual who abandons or denies ownership of personal property may not contest the constitutionality of its subsequent acquisition by police. United States v. Cofield, 272 F.3d 1303 (11th Cir.2001). The issue in abandonment cases is whether the defendant in leaving the property has relinquished his reasonable expectation of privacy so that the search and seizure is *673 valid. United States v. Hoey, 983 F.2d 890 (8th Cir.1993).
If our task was simply to review the search of Stephens' backpack solely on the basis of his expectations of privacy for his personal effects, we could conclude that the search of the bag was reasonable and could be conducted under those circumstances without issuance of a warrant. This is not because the search was conducted pursuant to the plain view doctrine or as a search incident to a lawful arrest as urged by the state. Although the backpack was initially seen by the deputy from a location where he had a right to be, no facts existed which associated that property with criminal activity. Absent that association, the plain view exception to the warrant rule is inapplicable. State v. Evans, 441 So.2d 82 (La.App. 2d Cir.1983). Additionally, the search of the backpack was not a valid search incident to arrest. Although Stephens' location at the time of the arrest is unclear from the record, by all indications, Stephens was secured in the garage and offered no resistance to arrest. Even if Stephens was arrested near the steps leading to the entrance to the porch, the photographs show that the backpack would not have been located within his wing span or lunge space and was instead located beyond the screen door.
Nevertheless, the warrant exception of abandonment would apply to the inquiry of whether Stephens' personal privacy rights under our state and federal constitutions were infringed. In this case, we can conclude that Stephens' denial of ownership of the backpack constituted abandonment of the bag such as would generally allow deputies to search the bag without a warrant. United States v. Fulani, 368 F.3d 351 (3d Cir.2004), cert. denied, 543 U.S. 1091, 125 S.Ct. 963, 160 L.Ed.2d 901 (2005); United States v. Cofield, supra; United States v. Springer, 946 F.2d 1012 (2d Cir.1991); United States v. Lewis, 921 F.2d 1294 (U.S.App.D.C.1990). A voluntary denial of ownership demonstrates sufficient intent of disassociation to prove abandonment. United States v. Lewis, supra. Abandonment for purposes of the Fourth Amendment differs from abandonment in property law; here, the analysis examines the individual's reasonable expectation of privacy, not his property interest in the item. United States v. Fulani, supra. Thus, in his explicit denial of ownership, Stephens effectively abandoned the subject backpack and maintained no reasonable expectation of privacy in it. Clearly, had the bag been abandoned by Stephens in a public area, the subsequent search and seizure of the bag would have created no Fourth Amendment violation. State v. Samuel, 98-2571 (La.App. 4th Cir.11/17/99), 746 So.2d 832; State v. Nelson, 458 So.2d 527 (La.App. 4th Cir.1984), writ denied, 461 So.2d 314 (La.1984); United States v. Thomas, 864 F.2d 843 (U.S.App.D.C.1988); United States v. Collis, 766 F.2d 219 (6th Cir.1985), cert. denied, 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985). However, in this case, when the officers went beyond the garage area where Stephens was arrested, they ventured into the protected area of a residence whose owner was known not to be the defendant.
This brings us to the special Louisiana constitutional provision allowing "[a]ny person adversely affected by a search," in violation of our constitutional protection "against unreasonable searches" and "invasion of privacy," to "have standing to raise its illegality." From the rulings of the Louisiana Supreme Court interpreting this provision, a defendant adversely affected by the search of a home of another has standing under the Louisiana Constitution to assert a *674 homeowners's loss of privacy rights. State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396; State v. Byrd, 568 So.2d 554 (La.1990); State v. Talbert, 449 So.2d 446 (La.1984); State v. Owen, 453 So.2d 1202 (La.1984); State v. Gibson, 391 So.2d 421 (La.1980). See also State v. Long, 03-2592 (La.9/9/04), 884 So.2d 1176, cert. denied, ___ U.S. ___, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005); State v. Culotta, 343 So.2d 977 (La.1976). This added standing provision in our state constitution is therefore contrary to the federal rule that an accused may not raise the violation of a third person's Fourth Amendment rights for the suppression of evidence. State v. Owen, supra; Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).
An example of the application of Louisiana's standing rule is seen in State v. Talbert, supra. In that case, the police followed defendant into the apartment of Slade after observing Slade and the defendant on the steps in front of the apartment. The arrest of both men was found by the court to be without probable cause. Therefore, the initial intrusion into Slade's apartment was illegal. Because the search violated Slade's constitutional protection under Article 1, § 5 and the Fourth Amendment, defendant moved to suppress the drugs found in Slade's apartment which were linked to the defendant. The supreme court applied our standing rule and suppressed the evidence.
Similarly, in State v. Herbert, 351 So.2d 434 (La.1977), the police observed the defendant handing a small box to a third party in a public area frequented by narcotic addicts. The arrest of the third party which followed was found to have been made without probable cause. The small box containing heroin which was obtained by police during the wrongful arrest was suppressed by the court as evidence in the case against the defendant, even though it was not obtained in violation of his constitutionally protected privacy rights under the Fourth Amendment and Article 1, § 5. The defendant nevertheless enjoyed standing to suppress the evidence because of the illegality of the search of the third person.
In this case, when the officers entered the screened porch, they came within a protected area of the residence of the third party, Deshay Roberts. The curtilage of a home, that "area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life," is considered part of the home itself and is therefore afforded Fourth Amendment protection. State v. Brisban, 00-3437 (La.2/26/02), 809 So.2d 923. The front porch of a private residence falls within the curtilage of the home and is therefore accorded Fourth Amendment protection. Id. However, because of "an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and occupants summoned to the door by knocking," the front porch does not enjoy the same measure of Fourth Amendment protection as the home. Id. The police have the same right as other members of the public to approach the doorway of a home and see what was exposed by the owner to the view of the general populace. State v. Deary, 99-0627 (La.1/28/00), 753 So.2d 200.
From the perspective of the homeowner's expectation of privacy, the officer's entry onto the porch to search the backpack was an unlawful intrusion in violation of the homeowner's constitutional protections. While there were circumstantial indications prompting the officer to question Stephens about the ownership of the backpack, there was no evidence apparent on the backpack linking it clearly to *675 him. The officer's decision to search involved a greater possibility of invasion of the homeowner's privacy and property within the curtilage of the residence. The search in the residence therefore was an unconstitutional infringement of the homeowner's rights.
Our inquiry, however, does not stop with the finding of a constitutional violation against the homeowner. The imposition of the exclusionary rule within the context of Louisiana's special standing rule must also be considered under the unique facts of this case. State v. Culotta, supra, (where the court refused to suppress evidence secured after a search pursuant to a judicially-authorized warrant obtained by an affidavit asserting allegations against the accused from third persons illegally arrested and interrogated). The exclusionary rule, which was first imposed upon the states by the United States Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), is not federally mandated in this context because the violation of a third party's rights cannot be asserted by an adversely affected defendant under the Fourth Amendment jurisprudence. Moreover, the exclusionary rule is not expressly a part of the text of Article 1, § 5 of our constitution as a substantive right. Thus, as expressed in federal jurisprudence examining the propriety of the imposition of the exclusionary rule in various contexts, the exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), citing United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); see also New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990); Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Summarizing the concerns of these cases, the court in United States v. Leon, supra, further observed:
The substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights have long been a source of concern. "Our cases have consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury." [citations omitted] An objectionable collateral consequence of this interference with the criminal justice system's truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system. Indiscriminate application of the exclusionary rule, therefore, may well "generat[e] disrespect for the law and administration of justice." [citations omitted] Accordingly, "[a]s with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." [Citations omitted].
Id., 468 U.S. at 907-908, 104 S.Ct. 3405.
After review of all decisions of the Louisiana Supreme Court where standing has been given to the defendant to challenge the violation of a third party's privacy rights under Article 1, § 5, we find that the exclusionary rule has not been rigidly applied for enforcement of Louisiana's standing provision. State v. Culotta, supra; State v. Barrett, 408 So.2d 903 (La. *676 1981). In Barrett, the officers entered the residence of a third party without a search warrant or exigent circumstances to execute an arrest warrant on the defendant. During a pat-down search of the defendant in the residence, drugs were found, and he was charged and convicted for possession of the drugs found in the search. He argued on appeal that the exclusionary rule should have been applied in his trial because of the illegal entry in violation of the constitutional rights of the resident/third party. While the court recognized the defendant's standing to raise the illegality of the intrusion into another's residence, it refused to apply the exclusionary rule as a deterrent for that intrusion, placing emphasis instead on the status of the search incident to the valid arrest warrant. Regardless of the rationale of Barrett and its discounting of the intrusion upon the third party's privacy interest, it is clear from the jurisprudence that if the same pat-down search in Barrett had uncovered contraband linked to the resident of the home, such search would be in violation of the constitutional rights of the homeowner and would require, in a criminal proceeding against the homeowner, the suppression of the evidence by the exclusionary rule. State v. Wolfe, 398 So.2d 1117 (La.1981) and Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Thus, from the rulings of our supreme court, the exclusionary rule is not universally applicable in the context of our standing rule, where the victim of a warrantless action is not the accused and other circumstances provide some justification for the governmental action.
In this case, we find that the illegality of the search does not require the imposition of the exclusionary rule under these unique facts. The entry of the police upon the porch was into a place at the residence where some degree of intrusion was expected by the homeowner. The property which was involved in the search, like the search in Barrett, turned out not to be the property of a third party homeowner. There was some basis, given the backpack's proximity to defendant, to consider that the bag was the defendant's abandoned property. Last, while in a larger sense the search took place under circumstances requiring a search warrant, the homeowner's privacy was not in fact violated since the record neither reflects that the owner was ever aware of the police presence on the porch or that any property of the owner was rummaged or seized. Thus, in this case, where the actual intrusion experienced by the homeowner does not even compare to that experienced by the homeowner in Barrett, who witnessed Barrett's arrest during the unauthorized entry of the home, the deterrence from the exclusionary rule, which is marginal at best, should not outweigh the search for the truth involving the charged offense. We therefore find the application of the exclusionary rule unwarranted.

Conclusion
From our review of the jurisprudence of our supreme court applying Article 1, § 5 of the Louisiana State Constitution, the violation of the third party's constitutional right to be secure in his residence in this case does not warrant the imposition of the exclusionary rule pertaining to the evidence obtained against the defendant. Defendant's motion to suppress the evidence was properly rejected by the trial court. The conviction and sentence are affirmed.
AFFIRMED.
BROWN, C.J., concurs with written reasons.
BROWN, C.J., concurring.
Both the Louisiana and the United States constitutions protect people, not *677 places, against unreasonable search and seizure. Louisiana's Constitution Art. 1, § 5 provides that "[E]very person shall be secure ... against unreasonable search, seizure, or invasion of privacy." (Emphasis added). Obviously, place is important in determining whether an individual's Fourth Amendment rights are implicated. See Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).
In this case, the sheriff received confidential information that defendant was at Deshay Roberts' house working on a motorcycle and was in possession of methamphetamine. There were outstanding warrants for defendant's arrest. The deputies found defendant in the attached carport. They found marijuana on defendant's person in a pat down search. They did not find the meth the informant spoke of; however, deputies could clearly see a backpack inside the screened porch which was adjacent to the carport.
In Thornton v. U.S., 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), an officer observed defendant driving a car with license plates that did not match the car. Before the officer could make a stop, defendant parked, then got out and walked away from his vehicle. The officer stopped the now pedestrian some distance from the parked car and found drugs in his pocket in a pat down search. An arrest was made. The officer then went back to the vehicle defendant had been driving and found a gun. Defendant was charged with drug and firearms violations. The search was upheld as incident to a lawful arrest not because the arrestee might grab a weapon or evidentiary item from the car, but simply because the vehicle might contain evidence relevant to the crime for which he was arrested.
Justice Scalia's explanation in his concurrence provides an overview of the struggle to define the permissible scope of a search incident to a lawful arrest:
If Belton searches are justifiable, it is not because the arrestee might grab a weapon or evidentiary item from his car, but simply because the car might contain evidence relevant to the crime for which he was arrested. This more general sort of evidence-gathering search is not without antecedent. For example, in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), we upheld a search of the suspect's place of business after he was arrested there. We did not restrict the officers' search authority to "the area into which [the] arrestee might reach in order to grab a weapon or evidentiary ite[m]," Chimel, 395 U.S., at 763, 89 S.Ct. 2034, and we did not justify the search as a means to prevent concealment or destruction of evidence. (Footnote omitted). Rather, we relied on a more general interest in gathering evidence relevant to the crime for which the suspect had been arrested.
...
There is nothing irrational about broader police authority to search for evidence when and where the perpetrator of a crime is lawfully arrested. The fact of prior lawful arrest distinguishes the arrestee from society at large, and distinguishes a search for evidence of his crime from general rummaging. Moreover, it is not illogical to assume that evidence of a crime is most likely to be found where the suspect was apprehended.
...
In this case, as in Belton, petitioner was lawfully arrested for a drug offense. It was reasonable for Officer Nichols to believe that further contraband or similar evidence relevant to the crime for which he had been arrested might be found in the vehicle from which he had just alighted and which was still within *678 his vicinity at the time of arrest. I would affirm the decision below on that ground.
Thornton, 124 S.Ct. at 2135-2138.
In the instant case, defendant was lawfully arrested, he had marijuana on his person, and the sheriff's deputy had been told by a confidential informant that defendant was also in possession of methamphetamine. The deputies could clearly see the backpack on a screened porch within a few feet of the carport where defendant was arrested. Like the officer in Thornton, supra, it was reasonable for the deputies to believe that further contraband or similar evidence relevant to the crime for which defendant had been arrested might be found in the backpack. In Thornton, the court held that the officer could search, incident to a lawful arrest, the parked car from which the arrestee had just left, regardless of who actually owned the vehicle. In Thornton, Justice Scalia likened this search of a vehicle to the search in Rabinowitz, supra, of a business after an arrest.
The additional question presented concerns lawful access. As stated by the majority, "the front porch does not enjoy the same measure of Fourth Amendment protection as the home. The police have the same right as other members of the public to approach the doorway of a home and see what was exposed ... to the view of the general populace."
I would affirm.
APPLICATION FOR REHEARING
Before BROWN, C.J., and STEWART, CARAWAY, MOORE, and LOLLEY, JJ.
Rehearing denied.
STEWART, J., would grant rehearing.
NOTES
[1] In accordance with State v. Crosby, 338 So.2d 584 (La.1976), Stephens reserved his right to appeal the denial of his motion to suppress the seized methamphetamine.