JOHNSON, Justice,
dissenting.
I,The Fourth Amendment to the U.S. Constitution protects against unreasonable searches and seizures. Similarly, La. Const. Art. 1, Sect. 5 provides in part, “Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.”
In this case, police officers entered the residence at 719 Philip Street, in New Orleans, without a warrant, based on allegations made by Ms. Patrina Brown, who resided at 721 Philip Street, the other half of this double structure. We have long recognized in New Orleans that the two sides of a double house are separate residences, just as apartments in any building are separate residences.
Officer Robert Barreré testified that Pa-trina Brown informed him that persons were not supposed to be on the other side of the double, and that they were armed and doing drugs. She told Officer Barreré “Just open the door. You have my permission to go inside.” There is nothing in the record to support a conclusion that Officer Barreré could reasonably rely on Ms. Brown’s assertions that she had been given authority over the entire premises by her grandmother, and could therefore give the |2officer permission to enter 719 Philip Street without the consent of the occupant or tenant on the other side.
*1075 Longstanding Fourth Amendment jurisprudence precludes a landlord from consenting to the search of his tenant’s residence unless he also lives on the premises or the tenant has vacated the residence. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).
In Georgia v. Randolph, 547 U.S. 103, at 111, 126 S.Ct. at 1521, 164 L.Ed.2d 208 (2006), the Supreme Court observed that:
... A tenant in the ordinary course does not take rented premises subject to any formal or informal agreement that the landlord may let visitors into the dwelling, and a hotel guest customarily has no reason to expect the manager to allow anyone but his own employees into his room. In these circumstances, neither state-law property rights, nor common contractual arrangements, nor any other source points to a common understanding of authority to admit third parties generally without the consent of a person occupying the premises.[1]
Officer Barrei’e needed something more than Patrina Brown’s assertion that the individuals on the other side of the double should not have been there. As noted by the appellate court majority, the officer did not ask a single question to clarify if, in fact, 719 Philip street was otherwise occupied, or by whom, and he thus had no specific factual basis for concluding that the individuals on the other side of the door had no reasonable expectation of privacy. Questioning Ms. Brown prior to the search, as opposed to after, would have revealed that the individuals on the other side were relatives, also named Brown, who are listed in the arrest register as residents of 719 Philip Street.
Louisiana law accords greater protection of privacy rights than the Fourth Amendment because La. Const, art. I, § 5 expressly provides that anyone “adversely affected by a search or seizure conducted in violation of this Section shall have [ ^¡standing to raise its illegality in the appropriate court.” Under this expanded standing provision, “a defendant adversely affected by the search of a home of another has standing ... to assert a homeowner’s loss of privacy rights.”[2] Defendants did not have to show, as a matter of state law, that they were, or are, the tenants or residents at 719 Philip Street, as long as the evidence at the hearing established that the premises were not vacant but occupied by someone other than Patri-na Brown or her grandmother, and that they were not mere trespassers.

. Randolph, 547 U.S. at 112, 126 S.Ct. at 1522.

. State v. Stephens, 40,343, p. 7 (La.App. 2nd Cir.12/14/05), 917 So.2d 667, 673-74.