MAX N. TOBIAS, JR., Judge.
 

 _[iOn 4 February 2008, the defendant, Derone Patterson (“Patterson”), was charged by a bill of information with being a felon in possession of a firearm and with possessing cocaine in an amount of twenty-eight grams or more, but less than two hundred grams. Patterson pled not guilty at his arraignment. On 10 and 20 October 2008, testimony was given at a hearing on his motion to suppress the evidence. On 16 December 2008, the trial court denied the motion to suppress the evidence.
 

 The bill of information was amended on 10 February 2009 to allege attempted pos
 
 *1133
 
 session of a firearm by a convicted felon. On that same day, Patterson entered a guilty plea to both counts under
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976), thereby preserving his right to appeal the trial court’s denial of his motion to suppress evidence. The trial court sentenced Patterson to serve three years imprisonment for the violation of La. R.S. 14:95.1, and five years imprisonment for the violation of La. R.S. 40:967(F)(1). This timely appeal followed.
 

 Officer Victor Gant testified that on 31 August 2007, he was assigned to the New Orleans Police Department Fifth District task force. On that day, a concerned 12citizen entered the police station during roll call to make a complaint regarding several individuals distributing narcotics out of what the complainant described as an abandoned dwelling located at 3239 Metropolitan Street in New Orleans.
 

 The members of the task force unit formulated a course of action to investigate, which involved Officer Gant conducting surveillance of the location. Officer Gant related that from his surveillance position he observed five unknown black males standing in front of the location. He observed that the structure, and apparent residence, displayed considerable hurricane damage. The building had been gutted and had no windows or doors. A trailer was located on the front lawn of the property as well.
 

 After approximately twenty minutes of surveillance, Officer Gant observed Patterson enter a green Lincoln LS automobile parked at the location.
 
 [1]
 
 Patterson exited the vehicle shortly after entering. Officer Gant could see that he was carrying a black object in his hand. Patterson walked towards the residence and just before entering, Officer Gant observed that Patterson was carrying a Tech-9 semi automatic pistol with an extended magazine in his hand.
 

 Patterson emerged empty handed from the residence shortly thereafter. Officer Gant alerted other members of the task force of his observations and advised them to detain the defendant. Officer Gant discontinued his surveillance, relocated to the scene, and entered the building. To the right of the first room inside the building, he observed a white pillow on the floor with a few small tools in the area. He lifted the pillow and discovered the Tech-9 he had observed Patterson take into the building.
 

 |SA criminal records check revealed that Patterson had only recently been released from probation after being convicted of possession of cocaine. The defendant was then arrested for possession of a weapon by a convicted felon. Patterson was searched and approximately sixty-one grams of cocaine and $361.00 in small bills were recovered from him.
 

 The owner of the residence, Jane Knopp, arrived on the scene after Patterson’s arrest. She advised Officer Gant that no one had permission to be inside the residence and that she had made several complaints about people hanging out in front of her location. Ms. Knopp was living in the trailer located on the property. She told Officer Gant that she was in fear for her life, and that when she would tell the subjects to leave, they would come right back.
 

 Officers searched the Lincoln LS automobile parked at the location and recovered marijuana. Another individual, who had been observed distributing the marijuana from the vehicle, was arrested. Another individual was also arrested in conjunction with narcotics activity observed at the location.
 

 
 *1134
 
 Ms. Knopp testified that the she knew Patterson as his family had been a tenant of hers in 2003 or 2004 and that afterwards he began working for her. She testified that she was not in New Orleans on the day in question and consequently could not have spoken with Officer Gant. She stated that she was in Mississippi on that day. She related that she ceased living on the trailer in August 2009.
 

 Errors Patent
 

 Our review of the record reveals two patent errors.
 

 Patterson was convicted of possession of cocaine in an amount of twenty-eight grams or more, but less than two hundred grams, a violation of La. R.S. 40:967 F(1)(a) that provides for a mandatory fine of not less than $50,000.00, nor |4more than $100,000.00. In sentencing the defendant, the trial court did not impose a fine as mandated. This court has decided that the failure to impose a mandatory fine requires that the matter be remanded for the imposition of that fine.
 
 State v. Williams,
 
 03-0302, p. 3 (La.App. 4 Cir. 10/6/03), 859 So.2d 751, 753,
 
 following State v. Legett,
 
 02-0153, pp. 3-4 (La.App. 4 Cir. 5/22/02), 819 So.2d 1104, 1106, and
 
 State v. Hall,
 
 02-1098, pp. 5-6 (La.App. 4 Cir. 3/19/03), 843 So.2d 488, 494.
 

 A second patent error in the sentence concerns the trial court’s failure to prohibit parole as mandated by La. R.S. 14:95.1.
 
 [2]
 
 However, La. R.S. 15:301.1 A provides that in instances where the statutory restrictions are not recited at sentencing, they are contained in the sentence, whether or not imposed by the sentencing court.
 
 State v. Williams,
 
 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 798-99. Hence, this court need take no action to correct the trial court’s failure to specify that Patterson’s sentence be served without benefit of parole, probation, or suspension of sentence. The correction is statutorily effected. La. R.S. 15:301.1 A.
 
 [3]
 

 Assignment of Error
 

 Patterson contends that the trial court erred when it denied his motion to suppress the evidence suggesting that the evidence was obtained in violation of the United States and Louisiana Constitutions. Specifically, he contends that the Tech-9 should have been suppressed as Officer Gant possessed neither a warrant nor consent to search the building located at 3239 Metropolitan Street. Noting that the mere possession of a weapon is not prohibited by law, he contends that no probable | ¿cause existed to believe that he had committed a crime and that no argument could be raised to suggest that exigent circumstances precipitated Officer Gant’s war-rantless entry into the structure.
 

 He also contends that the evidence that was recovered from his person, the cocaine and U.S. currency, should also have been suppressed. Patterson contends that because his arrest was predicated by the recovery of the weapon in an illegal search, then the evidence obtained in the search incident to his arrest should also have been suppressed as it was tainted by the earlier warrantless search conducted at 3239 Metropolitan Street.
 

 The Fourth Amendment protects “the right of the people to be secure in their ... houses ... against unreasonable searches and seizures.” U.S. Const, amend. IV. “At the very core [of the
 
 *1135
 
 Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.”
 
 Silverman v. United States,
 
 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961). Similarly, the Louisiana Constitution protects the right of every person “to be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” La. Const. Art. I, § 5. A search or seizure conducted without a warrant issued upon probable cause is per se unreasonable, unless justified by a specific exception to the warrant requirement.
 
 Katz v. United States,
 
 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967);
 
 State v. Moreno,
 
 619 So.2d 62, 65 (La.1993).
 

 Initially, because of the circumstances involving Patterson’s presence at 3239 Metropolitan Street, the question arises whether he has standing under either state or federal law to contest the admissibility of the weapon that was seized by Officer Gant when he searched the front room of the building. The state contends | fihe does not because he lacked any reasonable expectation of privacy over his personal property at 3239 Metropolitan Street both because of the condition of the property and because he had no ownership interest in the property.
 

 In
 
 State v. Owen,
 
 453 So.2d 1202 (La.1984), the Court explained how an individual’s standing to challenge a violation of privacy is treated differently by our state and federal constitutions as follows:
 

 The federal jurisprudential rule is that one has standing only if the search or seizure allegedly violated the defendant’s own constitutional rights; and, the defendant’s fourth amendment rights are violated only when the challenged conduct invaded the defendant’s reasonable expectation of privacy rather than that of a third person.
 
 United States v. Salvucci,
 
 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980);
 
 Rakas v. Illinois,
 
 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978);
 
 Alderman v. United States,
 
 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). However, under La. Const, art. l[sic], § 5 as interpreted by this court, “any person adversely affected” by a search or seizure allegedly conducted in violation of art. 1 [sic], § 5 has standing to raise that illegality. There is no equivalent under Louisiana constitutional law to the federal rule that one may not raise the -violation of a third person’s constitutional rights.
 
 State v. Hebert,
 
 351 So.2d 434 (La.1977) (on rehearing);
 
 State v. Culotta,
 
 343 So.2d 977 (La.1976).
 

 Id.
 
 at 1205.
 
 See also State v. Perry,
 
 502 So.2d 543, 558 (La.1986) (“The Louisiana Constitution does not limit standing to challenge a search to those who live in the premises and thus have a reasonable expectation of privacy in it.”).
 

 Accordingly, although it is safe to say that Patterson lacked a reasonable expectation of privacy over his property at 3239 Metropolitan Street, he nevertheless has standing to contest the legality of the search.
 
 [4]
 
 However, the ^propriety of the trial court’s ruling denying Patterson’s motion to suppress the evidence is not entirely resolved by answering the question of his standing.
 

 In
 
 State v. Walker,
 
 06-1045 (La.4/11/07), 953 So.2d 786, the Court confronted a set of circumstances whereby the defendant’s rights under the Louisiana Constitution were unaffected by the warrantless entry into a home of a third person and subsequent apprehension of him. In
 
 Walker,
 
 the police were chasing the defendant
 
 *1136
 
 when he fled into the home of a third person. Unbeknownst to the officers, the owner had previously informed the defendant that he was not allowed in her home. The defendant was apprehended inside the home, and narcotics which he discarded were recovered. The Court found that even though the Louisiana Constitution allows a defendant to raise the violation of a third person’s privacy interests, no legitimate purpose would be served by suppressing the evidence seized after the war-rantless entry into the house by permitting the defendant to assert a third party’s privacy interests, which he had himself violated.
 
 Id.
 
 at p. 8, 953 So.2d at 791.
 

 Here, Officer Gant testified that Ms. Knopp stated to him that no one had permission to be inside the residence, that she had made several complaints about subjects hanging out in front of her property, and that she was in fear of the subjects because she would tell them to leave and they would just come right back.
 

 We acknowledge that Ms. Knopp’s testimony was in conflict with Officer Gant’s, it is clear that the trial court believed the officer in ruling as it did. Furthermore, regardless of whether Patterson was known to Ms. Knopp, nothing suggests that she consented to the use of her residence, its condition notwithstanding, for the purpose of keeping a weapon by Patterson or any other person.
 

 In
 
 State v. Stephens,
 
 40,343 (La.App. 2 Cir. 12/14/05), 917 So.2d 667, another case presenting similar issues, the court refused to exclude evidence that was legitimately seized under the Fourth Amendment but whose seizure was in violation of the Louisiana Constitution.
 

 In
 
 Stephens,
 
 the defendant was apprehended hiding in the carport at the home of another. Subsequently, the police entered a screened porch at the front of the residence and searched a backpack where they located narcotics. The court concluded the search was an unconstitutional infringement of the homeowner’s rights and ruled that the defendant had standing to challenge the illegality of the search, even though he had no expectation of privacy in the backpack. The court examined two cases decided by the Louisiana Supreme Court where the court had not rigidly enforced Louisiana’s standing provision and concluded that exclusion of the evidence under the circumstances of the case was not mandated. The court stated:
 

 In this case, we find that the illegality of the search does not require the imposition of the exclusionary rule under these unique facts. The entry of the police upon the porch was into a place at the residence where some degree of intrusion was expected by the homeowner. The property which was involved in the search, like the search in
 
 [State v.] Barrett,
 
 [408 So.2d 903 (La.1982) ] turned out not to be the property of a third party homeowner. There was some basis, given the backpack’s proximity to defendant, to consider that the bag was the defendant’s abandoned property. Last, while in a larger sense the search took place under circumstances requiring a search warrant, the homeowner’s privacy was not in fact violated since the record neither reflects that the owner was ever aware of the police presence on the porch or that any property of the owner was rummaged or seized. Thus, in this case, where the actual intrusion experienced by the homeowner does not even compare to that experienced by the homeowner in
 
 Barrett,
 
 who witnessed Barrett’s arrest during the unauthorized entry of the home, the deterrence from the exclusionary rule, | ¡¡which is marginal at best, should not outweigh the search for the truth involving the charged offense. We therefore find the application of the exclusionary rule unwarranted.
 

 
 *1137
 

 Stephens,
 
 40,343, at pp. 12-13, 917 So.2d at 676.
 

 As minimally invasive upon the homeowner’s rights as the search in
 
 Stephens
 
 was, Officer Gant’s entry into the open and vacant structure on Metropolitan Street and subsequent recovery of the firearm from underneath the pillow, represents even less of an intrusion upon Ms. Knopp’s privacy rights.
 

 Accordingly, under the reasoning adopted by the Second Circuit in
 
 Stephens,
 
 this court likewise declines to exclude the firearm under the facts of this case.
 

 Additionally, two Louisiana courts under facts similar to those presented here have effectively found that when a defendant relinquishes control over or otherwise abandons property in a constitutionally protected area, the property may be seized without a warrant.
 

 In
 
 State v. Harper,
 
 27,278, p. 17 (La.App. 2 Cir. 8/23/95), 660 So.2d 537, 547, the defendant concealed a gun used in the commission of a crime by wrapping it in a shirt and in placing it in some tall grass in his neighbor’s back yard. The police searched the yard and recovered the gun without a warrant. The court concluded that the search was permissible because the gun had been abandoned, stating, “[w]hen property has been abandoned, a person’s property interest in it lapses, and there is no further reasonable expectation of privacy, so property may be searched and seized without normally requiring a search warrant.”
 

 Similarly, in
 
 State v. Fielding,
 
 37,943, p. 15 (La.App. 2 Cir. 12/10/03), 862 So.2d 420, 430, during a homicide investigation, police officers were informed that the defendant, who had become a suspect, frequently stayed in one of several abandoned houses near the scene of the crime. Also, a friend of the defendant |ininformed the officers that the defendant possessed a pistol that could possibly be found in one of the abandoned houses. Acting on the information, the police began a search of the abandoned houses in the area and found the murder weapon hidden between a cushion and the back of a recliner.
 

 Citing
 
 Harper,
 
 among other eases, the court found that probable cause existed to search the houses and that the trial court had properly denied the motion to suppress the evidence because the defendant left the gun in an abandoned house that did not belong to him.
 

 For the foregoing reasons, we find that the trial court properly denied Patterson’s motion to suppress the evidence with respect to the gun recovered by Officer Gant.
 

 Because the trial court properly denied Patterson’s motion to suppress with respect to the gun, the motion was also properly denied with respect to the evidence recovered incident to Patterson’s arrest. (We note that regardless of the disposition of the gun, the evidence recovered from Patterson was nevertheless admissible.)
 

 From the testimony, it is clear that the police had a reasonable suspicion to detain Patterson under the belief that he may have been engaged in narcotics trafficking.
 
 See
 
 La.C.Cr.P. art. 215.1;
 
 State v. Temple,
 
 02-1895, pp. 4-5 (La.9/9/03), 854 So.2d 856, 859-60. Acting on the initial complaint, Officer Gant confirmed one aspect of the reported observations of the concerned citizen who had contacted the officers at the precinct earlier that day when he observed several unknown individuals standing about in front of the vacant and hurricane damaged residence. Additionally, narcotics trafficking activity emanating from the. vehicle was also observed, further confirming the complaint. These observations led to the | uarrest of two other subjects from the location. When Officer Gant observed Patterson transporting the Tech-9 semi
 
 *1138
 
 automatic pistol from the automobile into the vacant house, he had the requisite reasonable suspicion to further his investigation by stopping the defendant. Having observed Patterson with the gun, a criminal background check would have created probable cause to arrest Patterson for being a felon in possession of a firearm. Incidental to that arrest, he could search the defendant and lawfully seize the cocaine.
 
 State v. Parker,
 
 06-0053, p. 3 (La.6/16/06), 931 So.2d 353, 355.
 

 Conclusion
 

 For the foregoing reasons we affirm Patterson’s convictions; however, we remand this case to the trial court for imposition a fine as required by La. R.S. 40:967 F(l).
 

 CONVICTIONS AFFIRMED: REMANDED FOR IMPOSITION OF FINE.
 

 [1]
 

 . It was subsequently determined that the ve-hide was registered to Patterson.
 

 [2]
 

 . La. R.S. 14:27 provides that the sentence shall be imposed "in the same manner as for the offense attempted.”
 

 [3]
 

 . Although La. R.S. 14:95.1 also calls for a mandatory fine, La. R.S. 14:27 only prescribes a penalty of not over one-half of the maximum fine. No minimum fine is mandated.
 

 [4]
 

 . The trial court concluded that Patterson had no reasonable expectation of privacy over the gun at the residence, and Patterson does not challenge that conclusion.