MeDONALD, j.,
dissents.
|,I respectfully disseht from-the majority’s opinion that thé ‘Seizure of the drugs was illegal, and I would affirm the'decision of the trial court in dénying the motion to suppress.
I agree with the majority that the agents had a reasonable suspicion to . stop and question the defendant. Having done so, they were also justified in conducting a protective search for weapons for their own safety, sometimes referred - to as a Terry search.[1] However, I believe the majority errs in analyzing this search as a search incident to the stop. They are correct that a law enforcement officer needs both probable cause to search and exigent circumstances to justify a noneon-sensual warrantless intrusion into a private premises. But, both the trial court and the majority erroneously focus on the exigent circumstance aspect of this case.
- The trial court stated, “the real issue is whether or not, under the circumstances, were there such exigencies that the police were entitled to open the barbecue pit and seize ■ the evidence that they -ultimately found.” ‘ The trial court was clear that the time of night;' the defendant’s evasive behavior; the tom baggies on the ground; the experience of the agents regarding a high-crime area with drugs and weapons; and the observation-that the grill had just been handled; “were enough exigencies to justify” Agent Renfro’s opening the ;grill in the belief that there was a weapon inside within reach of the defendant. The majority -found that .. the agents did not develop probable cause to search the closed- grill or to arrest 12the defendant until after the grill ,\ya,s;.opened. Consequently, the warrantless, search was not justified by the exigent circumstances exception.”.,, The majority reaches an inconsistent conclusion in .finding that the search of the area where the defendant had disappeared (the area where the grill was located) was a reasonable search incident to the investigatory stop, but then finding that “the defendant was detained at the street, some thirty feet from the grill Under the totality of the circumstances, opening the grili, exceeded the limited scope of the permissible search justified by the stop.” Emphasis added.
While I do not necessarily disagree with the trial court’s legal findings at the motion to suppress hearing, I believe Agent Renfro had the right to seize the drugs from the grill under a separate legal theory. The critical question is whether or not *1026 the defendant had a legitimate expectation of privacy in the grill; it was the defendant’s expectation of privacy that forms the legality vel non of Agent Renfro’s actions. Both the Fourth Amendment of the United States Constitution- and Article I, § 5 of the Louisiana Constitution protect only reasonable expectations of privacy. If it is determined that the defendant had no reasonable expectation of privacy in the area invaded, neither a warrant nor an exception to the warrant requirement-is needed for the seized evidence to be admissible. The test by which a person’s “expectation of privacy” is measured is twofold: first, the person must exhibit an actual subjective expectation of privacy and, second, the expectation must be one that society is • prepared to recognize as reasonable. State v. Paulson, 98-1854 (La.App. 1st Cir.5/18/99), 740 So.2d 698, 700-01. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
Agent Bookenberger had testified at the motion’ t’o suppress hearing and trial that the defendant identified his address as 2622 Daniél Turner Court. Agent Book-enberger testified on direct examination at trial that after the defendant was IsMirandizéd, he stated that the 2622 Daniel Turner address was family property and that the grill belonged to his family. On cross-examination at trial, Agent Book-enberger testified that he could not confirm where the defendant lived or' who owned the grill. The agent further stated that they “did a criminal history report” on the defendant and that none of the addresses on the report were 2622 Daniel Turner Street.
The defendant’s sister, Dominique Moul-trie, ‘ testified at trial that her (and the defendant’s) mother lived in the brown trailer that was the subject of the photographs taken and where the defendant had walked toward when the agents turned onto Daniel Turner Court. Dominique identified their mother’s address as 2626 Daniel Turner Court. Dominique further testified that, while the defendant visited the Trailer, he did not live in, the trailer with his mother, he had not lived there for the past two years, and that he lived with her (his sister) some of the time, and with his brother and his child’s mother at other times. The grill that Agent Renfro opened was described by him at the motion to suppress hearing as black, with four legs, and a round, kettle-type, hinged lid. The lid sat askew in its carriage before he opened it.[2] Agent Bookenber-ger described the grill as “a charcoal pit, just your typical circle style,” the old, metal kind. The grill was not seized as evidence (as the drugs were), and the picture provided- at trial (and for appellate purposes) does not contain the grill. It is not clear what happened to the grill, and Agent Bookenberger testified at’ trial that he had no idea what happened to it.
UDominique testified that a lady named Betty stayed at the white trailer next to the defendant’s mother’s trailer. Defense counsel showed Dominique a picture of the trailer, which she identified as her mother’s. This was identified as Exhibit D-l (not introduced or made part of the appellate record). Dominique stated that the grill was not in the picture she was shown. The following exchange then took place regarding the grill:
*1027 Q. — and they found some drugs in a barbeque pit on the edge of the driveway. My question to you is does your mother normally or customarily have a barbeque pit on the edge of her driveway?
A. No.
Q. Why would you- say that?
A. • ‘Cause she barbeque -all the time and she move around from the front.
Q. Uh-huh.
A. She, she moves it around a lot. Sometimes she had it in the backyard, sometimes by the front door. Some-' times behind the car.
This was the extent of Dominique’s testimony about a grill near the trailer. Whether the black grill identified by Agent Renfro was the same grill Dominique was describing at trial is not clear. "As such, it is not clear, nor was it ever made clear at either the motion- to suppress hearing or the trial, who owned the black grill (the defendant’s mother, Betty, or neither), or even if the grill worked. In any event, while proof of ownership was never definitively established, the defendant was clearly not the owner of the grill..
On cross-examination, the prosecutor showed Dominique a picture of her mother’s trailer,5'which did not have the grill in it. (State Exhibit 7). This was the sole photograph made a part of the appellate record. The grill, according to Agent Ren-fro, was at the end of the driveway, on the concrete, several feet from the trailer door and, according to Agent Bookenberger, about thirty feet from the road. It was in front of an old, abandoned vehicle, also in the driveway. There was no- testimony at the motion to suppress hearing regarding curtilage, or what might be considered to be curtilage. Curtilage is the area to which extends the intimate | ^activity associated with the sanctity of a man’s home and the privacies of life, and therefore has been considered part of [the] home itself for Fourth Amendment purposes. Oliver v. United States, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984).
While the protection against warrantless searches extends to a home’s curtilage, see United Statest v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), areas that are not within the curtilage are considered “open field,” and searches therein are .not subject to the Fourth Amendment’s reasonableness requirement. See Oliver, 466 U.S. at 178-81, 104 S.Ct. at 1741-42.
In Dunn the Supreme Court found, that .the curtilage question should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by, .The Dunn Court cautioned, however, that combining these factors did not produce a finely tuned formula that, when mechanically applied, yielded. a “correct” answer to all extent-of-curtilage questions. Rather, according to the Court, “these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration — whether the area in question is so intimately tied to the home itself that it should be planed under the home’s “umbrella” of Fourth Amendment protection.” Dunn, 480 U.S. at 301, 107 S.Ct. at 1139-40.
The.grill in this case was at the very end of the driveway (furthest away from the street), where the driveway ended and the grass began. . An old, broken down car was on the grass, ,apd the back of the car came right, to the edge of the driveway. Thus, the grill was right next to the back of the car. At the motion .to suppress hearing, Agent Bookenberger testified that *1028 the grill was “in the lawn right l^past the driveway.” Agent Renfro testified at the hearing that'the grill “was on the driveway in front of the vehicle that was in the driveway.”, Despite his earlier testimony at the motion to suppress hearing,, Agent Bookenberger testified at trial .on direct examination that the car was in the grass and the 'grill was at the end of the driveway on the concrete. On cross-examinar tion, Agent Bookenberger reiterated the grill was on the actual driveway:
Q, Okay. Now, is it also true that the diagram that you just drew for Mr. Da-gate,’isn’t'it also true that the barbeque pit was not at the edge of the concrete or was not on the concrete, but the barbeque pit was actually on side of the trailer in the grass?
A. No, it was not.
Q. It was not?
A. It was on the concrete.
Agent Renfro testified at trial that the grill was “[o]n the cement” and not the grass.'
The driveway runs along the side of the trailer (lengthwise), wherein the defendant claimed to live. (State Exhibit 7, picture of trailer). Agent Bookenberger testified at trial that the defendant told him that he lived in the trailer (¿t 2622 Daniel Turner). Agent Bookenberger further testified that he was not able to confirm where the defendant lived, who owned the trailer, or who owned the grill.
The question, thus, is whether the driveway, or at least that portion of the driveway where the grill was located (the very edge of the driveway furthest away from the street and where the concrete ends and the grass begins), is curtilage. There was no fence around the front or side yard of the defendant’s mother’s trailer; as such, the trailer and property were accessible through a non-gated driveway, or from the front lawn, or from the street. Once in the driveway, the grill and anything else outside could be seen by anyone who had entered the property. There was no evidence that any measures had been taken to prevent people from entering the yard through the driveway (or any other point of entry) and [^approaching the home. The grill was in close proximity to both trailers, the one in which the defendant’s mother lived and the one where Betty lived. There was little evidence regarding what the area was used for. Dominique testified that her mother barbequed. all the time, but in various locations and not necessarily limited to the area where the grill was found., Therefore, I do not believe the grill was located within the curtilage of the trailer. I do not believe the defendant had a reasonable expectation of privacy in illegal drug activities in the yard. See Paulson, 740 So.2d at 700-01. More specifically, the defendant could not have had a reasonable expectation of privacy inside of a grill that he did not, own, which was near a trailer that he did not live in.. See State v. Brumfield, 2005-2500 (La.App. 1st Cir.9/20/06), 944 So.2d 588, 592-93, writ denied, 2007-0213 (La.9/28/07), 964 So.2d 353 (the defendant had no expectation of privacy in a trailer he followed his girlfriend into). , Even if the grill at- issue was owned by the defendant’s mother and the grill was considered on the curtilage, the defendant as, a non-owner and non-resident. still had no reasonable expectation of privacy in the trailer or its yard, or in objects in the yard he did not own. See State v. Campbell, 93-1959 (La.App. 4th Cir.5/26/94), 640 So.2d 622, 627 (where the fourth circuit found that because the defendant presented no evidence that he owned or-rented the house where he hid the cocaine, he had no reasonable expectation of privacy in the house or its yard, and that although the bag of cocaine was within the curtilage of the residence, the defendant had no privacy interest in the *1029 residence). See State v. Baker, 99-2846 (La.App. 4th Cir.10/18/00), 772 So.2d 225, 228-29.
State v. Stephens, 40,343 (La.App. 2nd Cir.12/14/05), 917 So.2d 667, 673-74, writ denied, 2006-0441 (La.9/22/06), 937 So.2d 376, addresses Louisiana’s law on third-party standing. Acting on a tip that Stephens was at a certain location, the officers found him and - arrested him under the carport of a residence. A | ^backpack was seen inside a screened porch near him and Stephens denied any knowledge or ownership of it. ■ The officers 'Opened the screen door, went onto the porch, opened the backpack, and found papers with Stephéns name on them along with methamphetamine and a pistol. The trial court denied a motion to suppress. The court of appeal found the intrusion onto the porch to be unlawful from the perspective of the homeowner even though they found' that a “front porch does not enjoy the same measure of Fourth Amendment protection as the home.” The court went on further to note that “The officer’s decision to search involved a greater possibility of invasion of the homeowner’s privacy and property within the curtilage of the residence.” In the present case thé grill was located on a driveway a few feet from the trailer. There was no positive identification of the owner, other than it was not the defendant." And even if it was within the curtilage of the mother’s trailer (which I do not believe is supported by the evidence) opening the grill cover involves very little possibility of invasion of the homeowner’s privacy), unlike entering a screened porch and opening a backpack.
The Stephens court also has a good discussion of the exclusionary rule when a defendant challenges the violation of a third party’s privacy rights under the Louisiana Constitution. The court determined that “the exclusionary rule has not been rigidly applied for enforcement of Louisiana’s standing provision” and chose not to impose the exclusionary rule. Id. at 676.
For these reasons I believe the search of the grill and the seizure of the drugs was valid, not for reasons involving exigency, but because the evidence does not indicate that it involved the curtilage of the trailer. Even if it did, as the majority has found, I do not believe we should apply the exclusionary rule to these facts. The homeowner’s privacy was not violated and no property of the homeowner was seized. I would affirm the denial of the motion to suppress.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. Agent Renfro made clear that despite the grill cover being crooked, he could not see inside of the grill without lifting the cover; as such, the plain-view exception to the warrant requirement is not at issue here. See Horton v. California, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2307-08, 110 L.Ed.2d 112 (1990); State v. Howard, 2001-1487 (La.App. 1st Cir.3/28/02), 814 So.2d 47, 53, writs denied, 2002-1485 (La.5/16/03), 843 So.2d 1120, 2006-2125 (La.6/15/07), 958 So.2d 1180.